HAAKON COUNTY, Respondent v. BRUNSWICK CORPORATION, Appellant

(184 N.W.2d 768)

(File No. 10843. Opinion filed March 16, 1971.)

**Bangs, McCullen, Butler, Foye & Simmons,** Rapid City, for defendant-appellant.

**Edward Blando,** State's Atty., Philip, for plaintiff-respondent.

COOPER, Circuit Judge.

Appellant is the vendor under a conditional sales contract dated February 20, 1963, under which bowling equipment was sold to Bowl Mor Lanes, Inc., of Philip, South Dakota. Personal property taxes assessed to Bowl Mor Lanes based on the value of the bowling equipment for the years 1966-1969, inclusive, were not paid. Appellant repossessed the bowling equipment November 23, 1969. On November 25, 1969, the county treasurer, after changing the assessment rolls to name appellant as owner of the bowling equipment, issued a distress warrant against the property to collect the delinquent taxes. By agreement of the parties, this warrant was not served upon the appellant posting bond guaranteeing payment of the taxes if it was found to be legally liable for them. On December 10, 1969, appellant conducted a public auction pursuant to the law relating to repossession of property under conditional sale, at which time appellant bid in the property.

The sole issue is whether the Treasurer of Haakon County has legal authority to levy on the bowling equipment for collection of taxes assessed against such equipment.

This Court, in General Motors Acceptance Corporation v. Whitfield, 62 S.D. 415, 253 N.W. 450, held that a Frigidaire, acquired under a conditional sales contract June 5, 1931, could not be levied upon in 1932 for taxes assessed for the years 1925 to 1931, inclusive, on the grounds that the conditional buyer, Bessler, "did not have on January 1, 1932,

or at any time prior to the attempted levy, legal title to or complete property rights in the Frigidaire in question."

It should be noted that no part of the taxes to be collected was based on the value of the Frigidaire, so the facts are substantially different from the present case.

The Court went on to say, "It may very well be true that Bessler could transfer or incumber his rights (such as they actually were) and that the same could be reached by his creditors, and **if apt procedure was provided by statute could be applied to his taxes;** but we do not think that his rights were of such nature that they could be reached by distress and sale under the provisions of section 6775, R.C.1919." (emphasis supplied)

Section 6775 provided in part as follows:

"The county treasurer shall deliver such (distress) warrant to the sheriff of his county. Such warrant shall constitute the sheriff's authority and he shall immediately proceed to execute the same, and collect the tax by seizure of personal property of such person to an amount sufficient to pay such tax, with accrued penalty and interest, if any, and all accruing costs, wherever the same may be found in the county. From such seizure no property shall be exempt except personal property absolutely exempt from execution, and the sheriff shall immediately proceed to advertise the same * * *; provided, that before making such sale, the sheriff shall ascertain from the office of the register of deeds of his county whether or not such property to be sold is incumbered by chattel mortgage and, if found incumbered, he shall mail to the mortgagee a notice of such sale * * *."

The code revisors changed the wording of such section in the 1939 Code, Section 57.1016, to read as follows:

"Before making seizure of any property the sheriff shall ascertain from the records in the office of the register of deeds, the amount of any mort-

gages, **conditional sales contracts,** or other liens upon the property, and also the names and addresses of the lien holders and shall also procure from the county auditor a copy of the assessment blank upon which the tax is based, if the same is then on file with such county auditor.

"In making the seizure of property, the sheriff shall first seize such property as is not incumbered by any lien of record but **nothing herein contained shall prevent the sheriff from seizing any property for the tax based on that** specific property, nor from seizing sufficient incumbered property to exact the proportion of the whole tax to be collected, which the value of such incumbered property bears to all of the available property subject to the distress warrant, nor shall anything herein contained prevent the sheriff from resorting to incumbered property for collection of all of said tax, if the same is otherwise liable, and if the sheriff is unable after due diligence to collect the said tax as hereinbefore otherwise specified.",

and in the source notes states: "Source: Part of §§ 6775 and 6776 and all of § 6777 Rev.Code 1919, revised, amplified, and combined **to make jurisdiction and procedure definite, remove controversy as to rights of incumbrancers.**" (Emphasis supplied)

It should be noted that conditional sales were included in the named encumbrances and a definite procedure set up in the case of encumbered property, no doubt with an eye on this Court's language in the General Motors Acceptance Corporation case emphasized above.

It is the position of the Court at this time that the revision of 1939, carried forward to SDCL 1967 as Sections 10-22-14 and 10-22-15, in the exact words quoted above, does provide the procedure for levying on property under conditional sale, and effectively disposes of any questions raised by the General Motors Acceptance Corporation case.

It is conceded that the taxes in question here were assessed on the bowling equipment, and that the distress warrant was directed toward this same bowling equipment. Clearly, the respondent was acting within the procedures outlined by the statute in seeking to levy upon this property. The judgment of the trial court is affirmed.

HANSON and WOLLMAN, JJ., concur.

BIEGELMEIER, J., dissents.

RENTTO, P. J., concurs in dissent.

COOPER, Circuit Judge, sitting for WINANS, J., disqualified.

BIEGELMEIER, Judge (dissenting).

The plaintiff in this action is Haakon County. The dispute appears to involve taxes originally assessed on bowling equipment sold on a conditional sales contract by Brunswick to Bowl Mor Lanes, Inc. for the years 1966 through 1969 which are unpaid. The record shows that the state's attorney executed an affidavit alleging these taxes were assessed against Bowl Mor Lanes; that they were unpaid; that Brunswick had taken possession thereof because of default in the sales contract and that Brunswick intended to remove the property and asked for an order restraining such removal and to show cause why Brunswick should not be required to pay the taxes. The circuit court issued an order restraining the removal of the property pending further action and by order to show cause directed Brunswick to appear before it to show cause why it should not be required to pay the taxes. While this order was silent as to its service, these papers were served on Brunswick's resident agent. The record next shows a stipulation of facts between the Haakon County State's Attorney and attorneys for the defendant on which the court entered a judgment for plaintiff. Defendant has appealed.

Procedures for the collection of taxes include the issuance of a distress warrant by the treasurer to the sheriff who thereunder may proceed to seize and sell the property.

SDCL 10-22-8 through 10-22-28. The stipulation of facts states the treasurer has issued the distress warrant to the sheriff who is not a party to this action. "The county treasurer is the collector of taxes", SDCL 7-11-1, and "The county treasurer shall be the collector of all taxes * * * and he shall proceed to collect the same according to law * * *", SDCL 10-21-1. SDCL 10-22-53 authorizes the county treasurer to enforce collection of taxes by a civil action in circuit court "in his name as such treasurer"; SDCL 10-22-56 states what he shall "allege in his complaint" and that "judgment shall be rendered in favor of such treasurer"; SDCL 10-22-55 provides he may invoke "ancillary remedies" therein. The defendant "may set up by way of answer any defense" he may have, SDCL 10-22-57. The treasurer's duty and status in tax cases has been recognized and confirmed in several actions which have been before this court including J. I. Case Threshing Machine Co. v. Bentson, 57 S.D. 244, 231 N.W. 948; Massey-Harris Co. v. Lerum, 60 S.D. 12, 242 N.W. 597, and General Motors Acceptance Corporation v. Whitfield, 62 S.D. 415, 253 N.W. 450. The treasurer is not a party to this suit, has not commenced this civil action which, of course, requires the usual summons, complaint and answer. SDCL 15-6-3 and 15-6-7(a).

Injunction is governed by SDCL 21-8 whereby in section 3 "Interlocutory injunction is obtained by order of the court under procedure hereinafter set forth in this chapter"; it may be granted when it appears "by the complaint" (§ 4), or "during the litigation" (§ 5), or "during the pendency of an action" (§ 6), or "at the time of commencing the action" (§ 8), and "may be made upon the complaint" (§ 13), and a final injunction may be obtained "in a civil action under the procedure applicable to all civil actions" (§ 15). The court cannot obtain jurisdiction of any party by the issuance of an order to show cause alone. "A civil action is commenced as provided in §§ 15-2-30 and 15-2-31." SDCL 15-6-3. "An action is commenced as to each defendant when the summons is served on him". SDCL 15-2-30. A restraining order or injunction is generally an ancillary remedy to protect the rights of the parties during the pendency of the action.

This court so held in Black v. Circuit Court, 78 S.D. 302, 101 N.W.2d 520, where, by present SDCL 21-10-11, a state's attorney or a citizen was authorized to maintain an action in equity to enjoin a nuisance. The circuit court there, on verified complaints and applications for injunctions and without the issuance or service of any summons, entered a temporary injunction and fixed a time for hearing on the complaints and an order to the defendants to show cause why preliminary injunctions should not be issued and did at the hearing enter such injunction. This court held that no action had ever been commenced or was pending without the issuance or service of a summons and the circuit court "had no jurisdiction" to enter such orders and on certiorari annulled and vacated them.

> "Matters of jurisdiction are always before the court * * * Where the want of jurisdiction appears on the face of the record * * * it becomes the duty of this court to determine whether it has jurisdiction as a condition precedent to its right to decide the issues involved." Sioux City Boat Club v. Mulhall, 79 S. D. 668, 117 N.W.2d 92.

We recently held in County School Board v. Cottonwood School Dist., 81 S.D. 530, 137 N.W.2d 882, that "The court is required to take notice of jurisdictional questions, whether presented by the parties or not." No summons having been issued or served, the circuit court did not acquire jurisdiction by the issuance and service of the order to show cause.

The only remaining way the jurisdiction may be sustained is to consider it as submission of a stipulated case. SDCL 21-25. Manifestly, when it was commenced it was not intended or drawn as a proceeding under that chapter and was not in compliance with it. The stipulation negates this intention as it states it is for the purposes of "this action only" and does not contain any agreement that it is a submission of a stipulated case. Nor does the record show the affidavit required by SDCL 21-25-1 was executed or filed. That section provides: "It must appear by affidavit that the controversy is real, and the proceedings in good faith, to determine the rights of the parties." The statute of California

for many years contains the same wording. In Mellois v. Chaine, 1862, 20 Cal. 679, 680, the Supreme Court, after quoting the statute, said:

"Instead of this affidavit the record only shows the allegation in the agreed statement on appeal, that the cause was heard * * * on an agreed statement of facts, 'and the affidavit of defendant that the controversy was real.' Aside from the circumstances that such affidavit does not contain all the requisite facts, this agreed statement that there was such an affidavit * * * cannot be taken as a substitute for the affidavit.

"In the absence of the requisite affidavit, the proceeding is one of which we cannot take cognizance, and the appeal is therefore dismissed."

In the later case of White v. Clarke, 111 Cal. 425, 44 P. 164, the court adhered to that rule in the following language:

"The affidavit annexed to the agreed case is also insufficient to authorize the court to entertain the proceeding. Instead of showing that the controversy is real, its language is that the 'statement of the case' is a 'real controversy'; and, instead of stating that the proceedings are in good faith, it states that the 'contention' is in good faith. The judgment is reversed, and the cause is remanded to the superior court, with directions to that court to enter an order dismissing the proceeding."

The legislature has expressly required the affidavit and it is not for this court to relieve the parties of that requirement. As will be seen the California court constructing the statute not only makes the affidavit a jurisdictional matter but requires it to be in the express wording of the statute.

The trial court not having jurisdiction to enter judgment, the action should have been dismissed and we, therefore, do not reach the merits. Beresford Ind. Sch. Dist. v. Fletcher, 66 S.D. 500, 287 N.W. 497.

RENTTO, P. J., concurs in dissent.